Paul **KENDRICK**, et al., Plaintiffs,

v.

Mark **ZANIDES**, et al., Defendants.

No. C–84–6295–WWS.

United States District Court,
N.D. California.

May 23, 1985.

Quentin L. Kopp, William F. Fitzgerald, Kopp & Di Franco, San Francisco, Cal., for plaintiffs.

Patrict S. Bupara, Asst. U.S. Atty., Julie K. Lutz, S.E.C., William Jacobson, Long & Levit, San Francisco, Cal., Linda A. Fienberg, S.E.C., Washington, D.C., for defendants.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

This is an action charging violations of constitutional and common law rights. Plaintiffs are Paul Kendrick and the company through which he did business, Paul Kendrick & Company (collectively called "Kendrick"). In 1977 Kendrick, who was engaged in the securities business, came under investigation by the Securities and Exchange Commission ("SEC") and the Internal Revenue Service ("IRS"). Later the Kendrick company was liquidated by the Securities Investor Protection Corporation ("SIPC") and in 1983 Kendrick was tried and convicted of securities fraud and perjury. The complaint names the federal prosecutor, employees of the SEC, IRS, SIPC, and the United States Postal Service ("USPS"), the attorneys for Kendrick's bankruptcy trustee and Bekins Record Storage Company ("Bekins"). It charges violations of Kendrick's constitutional and common law rights and seeks damages of over thirty million dollars and other relief.

The action was commenced by the filing of an unverified complaint in state court. It was properly removed by the federal defendants pursuant to 28 U.S.C. §§ 1441 and 1442 to this Court which has jurisdiction. Defendants filed motions to dismiss, for summary judgment and for sanctions. After the filing of these motions, Kendrick filed an unverified amended complaint which, while adding a cause of action, makes no significant changes in the allegations.

Kendrick filed only a perfunctory response to the motions, stating that the amended complaint "moot[ed] the entire set of motions." A hearing on these motions was held on December 10, 1984, at which time Kendrick's request for a revised briefing schedule in light of the filing of the amended complaint was granted. Following this hearing, Kendrick voluntarily dismissed SIPC and its employees and Bekins.

A hearing on the motions of the remaining defendants was held on January 25, 1985. At that hearing the Court ruled as follows:

1. On the first and second causes of action, the Court informally indicated its intention to grant summary judgment but deferred ruling.

2. On the third cause of action, the Court dismissed the claim without prejudice as to those defendants who had not been properly served and granted leave to conduct discovery within ninety days following the hearing against the properly served defendants.

3. On the fourth cause of action, the Court granted the motion to dismiss for failure to state a claim with leave to amend within thirty days.

4. The application for sanctions was taken under submission.

Since the January hearing, Kendrick has filed two supplemental declarations but no amended pleading; the time to do so has expired. Kendrick noticed depositions of two Postal Service employees but failed to

serve subpoenas on them; neither the depositions nor any other discovery was taken and the time allowed for discovery has expired.

■ The action is now before the Court for final ruling on the pending motions.[1]

## I

### THE MERITS OF THE AMENDED COMPLAINT

#### *The First Cause of Action*

■ Kendrick charges defendants with having conspired, in violation of 42 U.S.C. § 1985, to punish Kendrick without due process of law "for his testimony in various federal proceedings and for his supposed crime." Defendants are said to have been motivated by envy of Kendrick's wealth. The allegation is that defendant Charles Burch, an assistant United States attorney, defendant Mark Zanides, an SEC attorney and later an assistant United States attorney, and defendant Edgar Hatton, an SEC investigator, wrongfully and in violation of a court order searched and seized files of Kendrick, removed documents from the files, and concealed their acts from Kendrick. As a result, Kendrick was impeded in the defense against criminal charges.

To the extent that the allegations purport to be based on 42 U.S.C. § 1985(3) and the second clause of § 1985(2), the conspiracy allegations are frivolous. Kendrick relies on "envy of plaintiff's wealth" to supply the class-based discriminatory animus required by the statute. No authority is cited and the Court is aware of none upholding wealth-based discrimination against the wealthy (as opposed to the poor) as the type of discriminatory animus encompassed by these sections.

■ To the extent that the allegations are based on the first clause of § 1985(2), plaintiffs offer no facts from which it could

be inferred that defendants acted to injure Kendrick for attending or testifying at his criminal trial.

Defendants have submitted extensive declarations denying the conspiracy charges and stating the material facts concerning the subject matter of the first cause of action. The facts established by their declarations and not disputed are in substance as follows:

On June 27, 1977, the SEC entered a formal order of investigation directing certain staff members to determine whether violations of the federal securities laws were occurring in connection with purchases and sales of securities by Kendrick. Defendant Rossen was the Associate Regional Administrator in charge of the SEC's San Francisco branch office from May 1972 to February 1979. Defendant Lawyer had no involvement in the investigation until February 1979 when he replaced Rossen. The responsibilities of Rossen and Lawyer were purely supervisory. Defendant Hatton was employed by the SEC in its San Francisco branch office as a securities compliance examiner and participated in the Kendrick investigation and administrative proceeding. Defendant Zanides was the principal staff attorney assigned to the investigation. Zanides' involvement in all proceedings before the SEC ended in 1979 when he left the SEC to join the U.S. Attorney's Office in San Francisco. As an assistant U.S. Attorney he did not conduct any investigation or participate in the prosecution initiated by the U.S. Attorney's Office against Kendrick in 1981.

After a one year investigation, the SEC staff recommended to the SEC that it institute administrative proceedings against Kendrick. Soon after the commencement of these proceeding, the SEC issued a subpoena for various business records of the company which were stored at Bekins in San Francisco. Bekins delivered approximately 70 boxes of records to the SEC

---

1. Shortly before the filing of this opinion and order, the Court was advised that plaintiffs had stipulated to dismiss all claims with prejudice. Because the issue of whether sanctions should be imposed remained, the Court considers it necessary and appropriate to address the merits of the action, notwithstanding the stipulation.

office where defendant Hatton reviewed them and discussed their contents with Kendrick's attorney.

In August, 1979, the SEC accepted a settlement offer from Kendrick in which he consented, without admitting or denying, to findings that he had wilfully violated anti-fraud provisions of the federal securities laws, and acknowledged that the S.E.C. had granted access to his files to the United States Attorney and the I.R.S. Pursuant to the order, the SEC revoked Kendrick's broker-dealer registration and barred him from associating with any broker-dealer company for five years.

On April 17, 1979, while the SEC's administrative proceeding was pending, the SIPC was appointed as liquidating trustee for Kendrick & Co. pursuant to the order of the bankruptcy court. As trustee, SIPC assumed ownership and control of all property of the company, including the business records stored at Bekins. The records that had been subpoenaed by the SEC were transferred to the Bekins storage facility. The defendant law firm of Murphy, Weir and Butler was appointed as counsel for the SIPC. Defendant Maly, a partner in that firm, was the attorney responsible for the liquidation.

During the summer of 1981, the U.S. Attorney's Office initiated a criminal investigation into Kendrick's securities activities. Defendant Burch was assigned to the case. He requested the assistance of defendant Hatton in the investigation which defendant Lawyer authorized.

On August 5 and 21, 1981, the U.S. Attorney's Office served a subpoena on defendant Maly requiring him to turn over the Kendrick records then in the care of SIPC. Defendant Burch directed defendant Hatton to review these records. Defendant Hatton sought and received permission to do so from Maly.

On August 19, 1981, Kendrick was indicted by a federal grand jury for securities fraud and perjury, charges arising out of the earlier SEC investigation. After trial in this Court in February, 1982, Kendrick was convicted on three counts. *United States v. Paul Kendrick*, CR–81–312–WWS (N.D.Cal.1982) *aff'd* 692 F.2d 1262 (9th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983).

Meanwhile, on September 24, 1981, the bankruptcy court entered an order authorizing SIPC to dispose of the company's records "in such a manner and at such time as the Trustee may deem appropriate" after first offering them to Kendrick. Maly contacted Kendrick's attorney and offered to return the documents to Kendrick. The attorney informed Maly "that Paul Kendrick was not in a position to assume responsibility for the records of [the Company]." SIPC continued to pay Bekins for storing the records until November 1, 1981, when this responsibility was assumed by the U.S. Attorney's Office. SIPC was discharged as trustee by order dated March 31, 1982. In March and again in May, 1982, following the trial, defendant Burch advised Kendrick's attorneys that the documents at Bekins would be destroyed unless Kendrick claimed them. No claim was made.

In 1978, while the SEC investigation was in progress, defendant Studabaker of the IRS was routinely assigned a batch of 1976 tax returns to review for possible audit. From these returns, Studabaker selected Kendrick's corporate return. Studabaker does not remember what particular items caused him to select that return, but he was then unaware of the SEC investigation. Kendrick cooperated with the audit and allowed Studabaker access to his records. During a review of those records, an examination of Kendrick's individual tax return showed no reported interest or taxable income. On this basis the IRS referred Kendrick's tax matter to the Criminal Investigation Division ("CID") for further investigation. Defendant Panacci, a special agent, was assigned by CID to the investigation and Studabaker was assigned as the cooperating agent since he had done the original audit.

In September, 1979, Panacci recommended prosecution of Kendrick for attempted evasion of estate tax liability of

his mother-in-law's estate of which he was the executor and for wilfully subscribing to false and fraudulent tax returns. The Department of Justice declined prosecution, however, and the cases were returned to the IRS for determination of civil liability. These matters are presently pending in the IRS Appellate Division.

During the IRS investigation Studabaker and Panacci disclosed no taxpayer return information to the SEC. Nor did the SEC disclose information to them, other than to allow, at Kendrick's request, access to Kendrick's records in the possession of the SEC.

The motions before the Court for summary judgment are governed by Rule 56(e), Fed.R.Civ.P., which provides in part:

When a motion for summary judgment is made and supported as provided in the rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Kendrick has not come forward with facts to support this claim, relying only on the conclusory allegations of the amended complaint. No declarations to support the conspiracy charges have been submitted so as to permit even an inference that defendants had an agreed plan to achieve the alleged objectives of the conspiracy. See *Bennett v. Campbell*, 564 F.2d 329, 331 (9th Cir.1977) (summary judgment properly granted where the plaintiff in a *Bivens* action alleging violations by federal law enforcement officials of his Fourth and Fifth Amendment rights failed to set forth specific facts refuting the defendants' sworn allegations disclaiming any knowledge of the alleged wrongdoing.) Nor has Kendrick sought to conduct discovery or

indicated how discovery might lead to the discovery of evidence raising a triable issue. Quite the contrary, in the opposition to defendants' motions filed January 9, 1985, Kendrick states that "Counts One and Two of the Amended Complaint were predicated on facts which plaintiffs have now concluded they cannot prove—though plaintiffs continue to believe them." (p. 30) Summary judgment must therefore be granted on this claim.[2]

*Second Cause of Action*

█ This cause of action charges defendants Burch, Zanides and Hatton with having wrongfully and secretly removed, secreted and destroyed documents from the Kendrick files, and concealed from the Court and from counsel the fact that documents Kendrick had been unable to locate had been deliberately removed or destroyed by them. As a result, Kendrick was denied due process and the effective assistance of counsel in the defense of the criminal action.

As shown in the preceding discussion under the First Cause of Action, the contemporary written record refutes these charges conclusively and Kendrick has conceded he cannot prove them. Nevertheless Kendrick has submitted two declarations of Boone, his attorney in the 1982 criminal trial. In the first declaration Boone states generally that he believes the facts alleged in the amended complaint to be true. He also states, however:

5. It was only in late December, 1984 that I discovered, and informed Kopp & DiFranco, that the strategy of proof on which their complaints were based was faulty. Only after consulting with my partner and reviewing our files did I remember that we were given, by the United States Attorney, access to the specific boxes that he had removed from Bekins storage. While *this fact makes the complaints' allegations unprovable,*

**2.** Defendants have raised various other defenses, including immunity and the statute of limitations. In view of the patent baselessness of the first two causes of action, and Kendrick's abandonment of the claims, it would extend this memorandum unnecessarily to discuss those defenses.

I have told Kopp & DiFranco, and I believe that many documents contained in those boxes were removed before they were delivered to me.

(Decl. of Jan. 9, 1985; emphasis added)

Boone does not identify a single document allegedly removed from the boxes; even if documents were removed, however, it would not follow that Kendrick was denied access to them and Boone makes no such assertion. Elsewhere in his declaration he makes clear that his belief is simply based on what Kendrick told him: that there would be "copious documents" but that he had been unable to find them at Bekins or elsewhere. These "missing documents" were dispositive of Kendrick's defense" but nowhere in his declaration does Boone (or Kendrick) give a clue as to what they might be, where they were last seen, how defendants might be responsible for them, or how they were "dispositive of Kendrick's defense."

On April 30, 1985, nearly four months later, Boone filed a supplemental declaration. In it he states that he now "specifically remember[s] five (5) documents which are listed, described and explained below." (Decl. p. 2) The following are the "five documents" discussed in the declaration:

(a) The first is a report to Kendrick from the Congregation of the Passion (one of Kendrick's defrauded customers). That document recapitulates the state of the accounts between the Congregation and Kendrick. Kendrick does not claim to have asked for it before the time when it was produced by the government at trial. It is not exculpatory since it merely confirms the evidence at trial supporting the charge against Kendrick that he was using the Congregation's funds entrusted to him for his own purposes, i.e. to capitalize his company. Even if it was, it was made timely available to Kendrick while the trial was in progress.

(b) A November 12, 1973, Subordinated Debenture Agreement between Kendrick and the Congregation. Boone states that Kendrick told him it existed. No other proof is offered of its existence or of de-

fendants' possession of it if it did exist. It is not claimed that Kendrick asked that it be produced in connection with the trial. Moreover, Boone's declaration, in asserting that the document would have been exculpatory, misstates the issue at trial; as the cited portions of the transcript clearly show, the issue was not whether Kendrick had "discretionary authority" (Decl. p. 4–5), but whether he had authority to withdraw Congregation funds for his own personal use (Decl. Ex. B, Tr. 215 (15–21); 223(13)(17); 261(12)–262(2); 265(15)-(21)). See *Kendrick, supra,* 692 F.2d at 1264–1266.

(c) Additional corporate documents said by Kendrick to exist which would have documented four "implied authorization transactions." No facts are offered to show what these documents were, where they were kept, what they would have shown, whether they were requested before trial or how defendants might be responsible for them.

(d) Documents relating to the purchase of $300,000 of Treasury notes. Again these documents are neither identified nor described nor is there a statement that such documents existed. The declaration is based essentially on an October 22, 1984, declaration by a former Kendrick employee in which he appears to recant some of his trial testimony. These statements have no more probative force than those in the preceding paragraph.

In sum, Kendrick has come forward with no facts creating even a shadow of a triable issue under this cause of action, and summary judgment must therefore be granted.

### The Third Cause of Action

In this cause of action, Kendrick alleges that defendants Julianna Nedd, Jerry Holtz, R.A. Larrison and B.M. McClanahan, all employees of defendant USPS, unlawfully delayed and opened mail addressed to Kendrick and members of his family and that they did so at the instance of Burch and Zanides.

The individual defendants Nedd, Holtz and McClanahan and Fletcher have heretofore been dismissed for lack of proper service, and Kendrick has made no attempt to perfect service on them.

■ Kendrick states no claim against USPS. The exclusive remedy for wrongful acts by a government agency is under the Federal Tort Claims Act, 28 U.S.C. § 1346, 2671 et seq. *See Insurance Company of North America v. United States Postal Service,* 675 F.2d 756 (5th Cir.1982). USPS must be dismissed.

Accordingly only Larrison, Burch and Zanides remain. The defendants' declarations establish the following undisputed facts:

■ Burch requested an investigation by the USPS of possible mail fraud by Kendrick. In December, 1983, Nedd was assigned as the investigator on this matter. She initiated a formal request through channels pursuant to 39 C.F.R. § 233.3 to conduct two mail covers. The first mail cover was for Kendrick's post office box and the second was for mail received by Kendrick or any of his companies at his residence. Neither lasted longer than thirty days. The purpose of the mail cover was to record information contained on the outside cover of first class mail matter addressed to Kendrick or his companies. Under the terms of 39 C.F.R. § 233.3(c)(1), a mail cover does not involve opening of mail. Defendants deny having opened any mail addressed to Kendrick or his family.

In their response, plaintiffs have submitted declarations of Kendrick and members of his family asserting the receipt of delayed and allegedly previously opened mail. Attached as exhibits are examples of envelopes which allegedly were previously opened and then re-sealed.

Because these declarations raised the potential of an issue of fact, the Court at the January 25 hearing granted Kendrick leave to conduct discovery during a period of ninety days. None has been conducted.

On the present record the denials of defendants stand uncontradicted. Kendrick elected to forego the opportunity, provided under Rule 56(e), to conduct discovery to develop facts with which to counter defendants' declarations. Summary judgment must therefore be granted on this claim.

### The Fourth Cause of Action

■ In the fourth cause of action, Kendrick claims that certain of the defendants acted to destroy his and his family's business and employment opportunities and credit. They did so by visiting unnamed persons and institutions, relaying disparaging information about Kendrick and warning them against dealing with Kendrick.

Inasmuch as the named defendants were all responsible for investigating potential civil and criminal violations by Kendrick (which in fact culminated in the trial and conviction of Kendrick on mail fraud charges in 1985), it is inevitable that in the course of performing their duties they would make contacts with persons which could have the effect of disparaging Kendrick. Without more, therefore, this cause of action alleges no wrongful conduct and therefore fails to state a claim on which relief can be granted.

On January 25, the Court gave Kendrick thirty days' leave to amend. No amendment has been filed. This claim must therefore be dismissed with prejudice.

### II

### SANCTIONS

Defendants have moved for sanctions under Rule 11, Fed.R.Civ.P. The rule provides in relevant part that the signature of an attorney on a pleading certifies:

> that he has read the pleading ...; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass....

The Federal Rules of Civil Procedure "govern the procedure in the United States district courts." Rule 1. A complaint initially filed in the state court and removed by the defendant to the federal court should not be subjected to scrutiny under Rule 11 because it was not governed by the rule when signed and filed. An amended complaint, however, filed in an action following removal to the district court is governed by the Federal Rules just as any other federal pleading. Thus, this action having been removed to the district court from the state court, only the subsequently filed amended complaint is appropriately examined for compliance with Rule 11.

■ The amended complaint was filed on December 3, 1984. The defendants' various motions to dismiss, for summary judgment and for sanctions were filed between November 1 and 27, 1984, *one to four weeks before the filing of the amended complaint.* Attached to those motions were documents which bore directly on the critical factual allegations made in the original complaint and renewed with embellishments in the amended complaint.

Following are the principal relevant documents served on Kendrick and his counsel *before* they filed the amended complaint:

1. An offer of settlement, signed by Kendrick and by his attorney, Geoffrey Knudsen of Boone & Knudsen, dated June 29, 1979, and findings and order by the S.E.C. accepting it, dated August 13, 1979. The offer acknowledges that Kendrick "ha[s] been advised that the United States Attorney ... and the Internal Revenue Service have requested that the Commission grant access to its investigative files related to this matter and that the Commission granted access." (Hatton decl. Exs. C, D)

2. An order of the district court filed April 17, 1979, consented to by Kendrick and Knudsen, appointing the SIPC as trustee for the liquidation of the Kendrick company's business, appointing Murphy, Weir & Butler as the trustee's counsel, and turning over to the SIPC possession and control of all of the company's assets and property. (Memo. of Burch, et al., Ex. D–1)

3. An order of the bankruptcy court, filed September 24, 1981, in the SIPC proceeding, ordering that the SIPC as trustee

shall be authorized and empowered to use, destroy or otherwise dispose of the books and records of the debtor [Kendrick & Co.] which are in the possession or under the control of the Trustee in such manner and at such time as the Trustee may deem appropriate, after offering the books and records to the former principals of the firm....

(Id. Ex. C)

4. A letter from Boone to Burch, dated October 8, 1981, re U.S.A. v. Kendrick, requesting "to initially review ... boxes: Nos. 164, 165, 166, 169, 170, 171, 188, 190, 191, 194, 198, 199, 200, 203, 204, 205, 219, 220, 223, 224, 226, 227, 228, 229, 230, 236, 237, 239, 241, 242, 246, 247 and 249," in storage at Bekins. (Id. Ex. E–2)

5. A letter from Knudsen to Burch, dated November 5, 1981, in the same matter, stating that "we will take responsibility for the integrity of materials being delivered to us from Bekins," and identifying 25 boxes of Kendrick records. (Id. Ex. E–3)

6. A letter from Knudsen to Burch, dated November 4, 1981, in the same matter, accepting responsibility for an additional 8 boxes being delivered from Bekins and requesting review of Box 222 in Burch's possession. (Id. Ex. E–4)

7. A letter from Knudsen to Burch dated January 26, 1982, in the same matter, accepting responsibility for 40 identified boxes being delivered from Bekins. (Id. Ex. E–5)

8. A letter from Burch to Boone, dated March 15, 1982, advising that the Kendrick records at Bekins would be destroyed and that any records Kendrick wished to retain should be obtained before April 1. (Id. Ex. E–6)

9. A letter from Burch to Boone, dated May 7, 1982, advising him that instructions had been given to Bekins to destroy the Kendrick records. (Id. Ex. E–7)

10. Subpoenas issued by the district court in August 1981 at the request of the United States Attorney and directed to defendant Maly for the production of Kendrick's records. (Maly decl. Exs. A, B)

In addition to these documents, the motions were supported by a number of declarations setting forth the facts summarized in part I of this opinion.

In the face of the foregoing documentary record, Kendrick and his counsel on December 3, 1984, filed an amended complaint ("A.C."). Simultaneously they filed a response memorandum addressed to defendants' motions, confirming that they had been served with the motions and had read them before they filed the amended complaint. In the paragraphs below the Court lists the crucial allegations of the amended complaint (some but not all made on information and belief), followed by a reference to the previously described documents attached to defendants' motions which refute them.

1. That the boxes of files and records stored at Bekins "have at all times been the property of plaintiffs." (A.C. 10 (11)–(12)) (See Item # 2, p. 16 *supra*)

2. That "[a]t no time were plaintiffs ever asked, or would they ever have consented, to review of these documents by the Office of the United States Attorney ..." (A.C. 10 (17)–(21)) (See Item # 1, p. 16, *supra*)

3. That "in the spring of 1979 ... ended whatever legal authority any SEC representative or officials of that or any other federal agency had to review any of these files without probable cause or a search warrant." (A.C. 10 (24)–11 (2)) (See Item # 1, p. 16, *supra*)

4. That in July 1981 "defendant Maly instructed Bekins to allow Hatton to collect evidence from plaintiffs' stored materials without necessity of any warrant, writ, subpoena, or investigative order and without showing any cause at all." (A.C. 12 (19)–(22)) (See Item # 10, p. 18, *supra*)

5. That the "September 25 and September 30 [1981] incursions [into] Kendrick's records occurred in direct contravention of an ... order of this Court ... issued September 24, 1981, [which] required that the Bekins records be returned to plaintiffs, or destroyed, at their option." (A.C. 13 (14)–(19)) (See Item # 3, p. 17, *supra*)

6. That "defendants Burch, Zanides, Hatton and their co-conspirators knowingly violated this September 24, 1981, court order." (A.C. 13 (20)–(22), A.C. 14 (6)–(10)) (Id.)

7. That "defendants Burch, Hatton and Zanides ... seized the entire *corpus* of the Bekins records without either warrant or other authority." (A.C. 14 (10)–(12)) (See items # 1, 2, 3, 10, pp. 16–18, *supra* ).

8. That "plaintiffs had no knowledge of the enormous seizures from their records until December 2, 1983." (A.C. 14 (18)–(19)) (See Items # 2, 4, 5, 6, 7, 8, 9, pp. 16–18, *supra* ).

9. That "the other defendant conspirators concealed from them the invasion of the Bekins documents." (A.C. 14 (23)–(25)) (Id.)

10. That "when plaintiff, in the course of the criminal proceeding specifically requested all records, documents, etc. within the possession of the government which had been obtained from him, defendant Burch's answer failed to mention his seizure of the Bekins documents he sequestered in July and September, 1981." (A.C. 14 (25)–15 (4)) (See Items # 4, 5, 6, 7, p. 17, *supra* )

11. That "defendants Burch, Zanides and Hatton destroyed the seized documents immediately after the trial, pursuant to the conspiracy ... in violation of the Fifth Amendment." (A.C. 16 (10)–(16)) (See Items # 8, 9, p. 18, *supra* )

12. That "when plaintiff filed a request in the criminal action for an enumeration of all records, documents, etc. in the government's possession, defendant Burch filed with this Court a purportedly complete answer which deliberately failed to mention any of the Bekins documents seized in July ..." (A.C. 16 (21)–(17) (1)) (See Items # 4, 5, 6, 7, p. 17, *supra* )

Examination of these allegations which are central to the first and second causes of action, described by Kendrick's counsel as "the heart and soul of the amended complaint" (Kopp decl. Jan. 25, 1985, 2 (9)), compels the conclusion that not only are they false but, also, that Kendrick and his counsel knew that they were false when they filed the amended complaint.

Kendrick and his counsel filed several declarations in opposition to the motions for sanctions. The declarations are more notable for what they do not say than for what they say:

They do not address the fact that Kendrick and his counsel had in their possession before filing the amended complaint the above described documents, as well as declarations refuting its central allegations;

They do not address the fact that even before receiving those documents, Kendrick and his former lawyers had knowledge of the material facts, having personally participated in the SEC, SIPC and criminal proceedings which are the subject of the action;

They do not set forth a single fact that would support an allegation of conspiracy against defendants;

They do not set forth a single fact that would support a charge that any defendant concealed, withheld or destroyed any document belonging to Kendrick;

They do not identify any file or record that counsel examined before filing either the complaint or amended complaint with a single exception, the Bekins entry log, but they do not state how the log supports any of the allegations.

What the declarations state in substance is:

That Kendrick told Boone and Knudsen in the earlier proceedings that there were copious (but unidentified) documents that would exonerate him but they were never found; and

That Knudsen and Boone read the complaint and amended complaint and that they believed the allegations to be true until late December 1984 when, hav-

ing reviewed their files and discussed it, they concluded that the allegations were "unprovable."

The balance of the declarations is devoted to lengthy argument which appears to the Court to be evasive, disingenuous and irrelevant.[3]

■ These declarations do not show that Kendrick and his lawyers complied, or even made an effort to comply, with Rule 11. Quite the contrary, they perpetuate the defamatory attacks on various defendants even after conceding that they are "unprovable" and they seek to justify them to the Court by declarations lacking candor.

■ In the light of this record, it is clear that the motions for sanctions must be granted. Not a semblance of a "reasonable inquiry" was made to determine whether the allegations were well-grounded in fact. Neither Kendrick nor his counsel conducted a pre-filing investigation to discover a factual basis for the allegations or did they obtain supporting facts from Kendrick's prior counsel. While it is not necessary for Kendrick's present lawyers to have conducted their own inquiry, if someone else has done so, Rule 11 requires that they have in hand sufficient credible information (as opposed to opinions or conclusions) from whatever source to enable *them* to form a reasonable belief that the allegations to which they put their signature are well-grounded in fact. *See Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir.1979). Statements such as that "[i]n general the facts set forth in the original complaint are confirmed by the recollection of ... Boone" (Kopp decl. 2), without more, do not satisfy the duty of inquiry, particularly where at the time counsel has in hand documents refuting those allegations. *See Wold v. Minerals Engineering Co.*, 575 F.Supp. 166, 167 (D.Col.1983); *Viola Sportswear, Inc. v. Mimum*, 574 F.Supp., 619, 621 (E.D.N.Y.1983); *Miller v. Schweic-*

---

**3.** See also the discussion of the Boone declarations at pp. 1167–1168, *supra*.

*kart,* 413 F.Supp. 1059, 1061 (S.D.N.Y. 1976).

The amended complaint before the Court is no ordinary pleading. It makes the gravest charges against federal prosecutors and investigators and attorneys, impugning their honesty and professional integrity and implying criminal wrongdoing. Neither Kendrick nor his counsel have come forward with facts to lend the slightest support to these charges. Moreover, they renewed those charges in the amended complaint, when they knew they were false, and they persisted in them in their subsequent declarations after they admitted them to be "unprovable."

The only reasonable conclusion is that Kendrick and his attorneys filed the amended complaint, and the subsequent declarations, not to prevail in the action, which they knew they could not, but to serve their vindictive purpose to damage the defendants' reputations and subject them to personal harassment. Sanctions must therefore be imposed.

Rule 11 states that the Court "shall impose upon the person who signed [a pleading in violation of the rule], a represented party, or both, an appropriate sanction." The sanction may include an order to pay to the other parties the amount of the reasonable expenses including attorney's fees incurred "because of the filing of the pleading." Permissible sanctions, however, are not so limited. The rule gives the Court discretion to determine what shall be appropriate.

■ Because of the egregiousness of the conduct involved, the sanctions imposed will not be limited to expenses and attorneys' fees incurred as a result of the filing of the amended complaint.

Kendrick and his attorneys will therefore be ordered to pay all of the reasonable expenses, including reasonable attorneys' fees, incurred by defendants in the defense of this action. Such an order is not only within the scope of the Court's discretion under Rule 11, but is also supported by other authority. The Court has inherent power to award attorneys' fees to the prevailing party in an action, such as the one before the Court, brought in bad faith, vexatiously, wantonly and for oppressive reasons. *See F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Alyeska Pipeline Co. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975). In addition, the maintenance of this action in the face of the facts known or available to Kendrick both before and after the filing of defendants' motions multiplied the proceedings unreasonably and vexatiously, entitling defendants to recover the resulting costs, expenses and attorneys' fees under 28 U.S.C. § 1927.

■ Nothing in the record indicates that as between client and counsel, one should be regarded as less blameworthy than the other. Accordingly, the order to be entered will impose joint and several liability for the amount to be assessed.

On or before June 21, 1985, counsel for defendants shall serve and file their applications for attorneys' fees and expenses with appropriate supporting declarations and other data. Plaintiffs shall serve and file any opposition by July 11, 1985. A hearing on the applications will be held on July 18, 1985, at 11 a.m.

Attorneys also have obligations as officers of the court. On the face of it, the conduct of plaintiffs' counsel in this matter reflects so egregious an abuse of the processes of the court as to raise questions concerning their fitness to practice in the federal district court. Accordingly, plaintiffs' attorneys Quentin L. Kopp and William F. Fitzgerald are ordered to show cause on Thursday, July 18, 1985, at 11 a.m., why they should not be suspended from practice in the United States District Court for the Northern District of California until further order of this Court. Any written opposition to this order shall be served and filed by June 21, 1985.

IT IS SO ORDERED.