**LIND–WALDOCK & COMPANY, Plaintiff,**

v.

**Glenn W. CAAN and Mary D. Caan, Defendants.**

**No. 87 C 5099.**

United States District Court, N.D. Illinois, E.D.

July 19, 1988.

Eldon L. Ham, Mary Jo H. Steele, Ham & Pawlan, Chicago, Ill., for plaintiff.

William H. Harbeck, Quarles & Brady, Milwaukee, Wis., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Glenn and Mary Caan (collectively "Caans"), having obtained a summary judgment dismissing this action brought by Lind–Waldock & Company ("Lind–Waldock"),[1] move for sanctions (recovery of attorneys' fees and expenses) under Fed.R. Civ.P. ("Rule") 11. For the reasons stated in this memorandum opinion and order, Caans' motion is granted alternatively under Rule 11 or under 28 U.S.C. § 1927 ("Section 1927").

### Timeliness of Motion

■ Though this action was dismissed on the merits March 3, 1988, Caans did not file their motion for sanctions until May 26—nearly 90 days later. Lind–Waldock's initial attack on the motion is on timeliness grounds, because Caans' filing did not take place within the ten-day timetable for motions to alter or amend the final judgment of dismissal under Rule 59(e) or within the 30–day timetable for Lind–Waldock's appeal of that judgment under Fed.R.App.P. 4(a)(1).

Lind–Waldock's position cannot be sustained in either legal or factual terms. Both those facets may be dealt with in relatively brief compass.

As to any legal requirement of a filing timetable, at least one Court of Appeals has recently announced a requirement that any Rule 11 motion must be filed before the underlying case is finally disposed of,[2]

---

1. This Court's March 3, 1988 memorandum opinion and order granting summary judgment (the "Opinion") was not previously published, in principal part for the reason stated here at the end of the section captioned "Merits of the Sanctions Motion." Because the principles announced in this opinion do require familiarity with the earlier decision on the merits, however, the Opinion is now being published contemporaneously with this one. Accordingly this opinion is deliberately not made fully self-contained, in the interest of avoiding unnecessary repetition.

2. See *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 97–100 (3d Cir.), concluding (*id.* at 100):
   To carry out the objectives of expeditious disposition, we adopt as a supervisory rule for the courts in the Third Circuit a requirement that all motions requesting Rule 11 sanctions

but no such rule has been promulgated either in this Circuit or by this District Court. Indeed, the only court rule arguably applicable to the timing of a Rule 11 motion for fees, this District Court's General Rule 46, calls for filing within 90 days after final judgment:

> A petition for attorney's fees in a civil proceeding shall be filed within 90 days of the entry of final judgment, provided that the court upon written motion and for good cause shown may extend the time. A petition for fees shall be denied if it is not filed within the period established by this rule.

No reported case has considered whether that rule covers motions for sanctions measured by the shifting of attorneys' fees, as well as to situations in which the award of fees is pursuant to the underlying substantive statute (as, for example, 42 U.S.C. § 1988 ("Section 1988") for the benefit of prevailing parties in actions under 42 U.S. C. § 1983). But in the absence of any limitation (whether imposed by statute, court rule or judicial gloss) rendering General Rule 46 plainly inapplicable, it would be unjust to reject Caans' motion filed in reliance on that provision's timetable. None of the authorities adduced by Lind–Waldock supports a different result.

Indeed, *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1079–80 (7th Cir.1987) at least suggests in dictum that motions for "sanctions" under Rule 11 are not to be equated with motions for "costs" (the predicate for a fee award under such statutes as Section 1988):

> The Supreme Court held in *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), that motions for attorneys' fees under § 1988 are not requests to "alter or amend" the judgment and therefore are not governed by the ten-day limit in Fed.R.Civ.P. 6(b) and 59(b). The Court did not say just what time rules do apply; it both invited district courts to adopt local rules (455 U.S.

at 454 n. 16, 102 S.Ct. at 1168 n. 16) and reserved judgment on the possibility that the time limit might be that applicable to bills of costs (*id.* at 454 n. 17 [102 S.Ct. at 1168 n. 17]). Several courts have taken the latter suggestion seriously, holding motions to the time within which the party could seek costs. E.g., *Montgomery & Associates, Inc. v. CFTC*, 816 F.2d 783 (D.C.Cir.1987). This is more appropriate for fees awarded as "part of costs" than for fees under Rule 11, which are awarded as "sanctions." The local rules in the Northern District of Illinois give parties 30 days to file bills of costs (Local Rule 45(a)) and 90 days to file requests for attorneys' fees (Local Rule 46). If the request for sanctions under Rule 11 is assimilated to either category, it is timely.

And perhaps more significantly for current purposes, *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 793 n. 4 (7th Cir.1983) expressly declined to adopt a 21–day rule for the filing of a motion for fees and costs and reconfirmed (*id.* at 793) either (1) the more general standard of a "reasonable time" or "as expeditiously as possible" after judgment if there has been no appeal on the merits or (2) "during the pendency of the appeal on the merits" if one has been filed. Clearly both those *Overnite Transportation* alternatives are totally inconsistent with Lind–Waldock's present insistence that any such motion by Caans *had* to be filed *before* Lind–Waldock's time to appeal the dismissal ran out.

Even apart from that legal analysis, the facts here plainly call for rejection of the Lind–Waldock position. Caans' counsel had regularly apprised Lind–Waldock's lawyers (beginning with the initial filing of the action) of their intention to seek reimbursement of fees and expenses under Rule 11. Then on the very same day the Opinion was issued (March 3, 1988), Caans' lead lawyer again told Lind–Waldock's lawyer that a Rule 11 motion would be filed "unless Lind–Waldock would agree to reim-

---

be filed in the district court before the entry of a final judgment. Where appropriate, such motions should be filed at an earlier time—as

soon as practicable after discovery of the Rule 11 violation.

burse a substantial portion of the fees incurred," in response to which Lind–Waldock's lawyer "requested that [Caans' lawyer] relay to him a specific dollar proposal" (Harbeck May 25 Aff. ¶ 10). On March 21 Caans' lawyer wrote his opponent stating he would recommend settlement of the fees claim for a 20% discount from the amount actually incurred, and again stating Caans' intention to seek full reimbursement should a Rule 11 motion prove necessary (Harbeck July 11 Aff. ¶ 5 and Ex. A).[3] It was not until nearly a month later, on April 15, that Lind–Waldock's lawyer wrote a letter response rejecting the proposal.[4]

Under those circumstances Lind–Waldock can scarcely claim surprise, and its arguments of prejudice as a result of the "late" filing of the Rule 11 motion ring hollow. It was forewarned of the proposed motion on a number of occasions. Certainly its argument that it might have appealed the dismissal had it known it would face a fees claim is belied by the sequence of events just recited. Moreover, that argument is also somewhat astonishing in what it discloses about the merits (or more accurately the lack of merit) of the underlying litigation and the attitude of Lind–Waldock and its counsel toward the lawsuit as such. Litigation is supposed to be a search for justice, not a game of tactics. If Lind–Waldock had a legitimate basis to appeal the dismissal (involving stakes far greater than the present fees-and-expenses claim), it should have done so without reference to the Rule 11 potential. And if Lind–Waldock did not have real grounds for appeal (as is clear in light of both the Opinion and its very failure to take an appeal), the present argument is not even a make-weight.

In short, Lind–Waldock comes up totally empty in its effort to cut off the Rule 11

motion at the outset on timeliness grounds. This opinion goes on to treat with the merits of the motion.

### Scope of Rule 11 Applicability

Lind–Waldock points to the procedural posture of this action, because it was filed in and was then removed from its original state court forum, as a roadblock precluding any Rule 11 sanctions. Lind–Waldock says, accurately enough, that the original Complaint was filed in the Circuit Court of Cook County and was therefore not governed by Rule 11 standards (see, e.g., *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 257 (4th Cir.1987)). Caans' successful summary judgment motion here dealt with that Complaint, which was not amended after the removal to this District Court on diversity-of-citizenship grounds.

■ At the outset it should be said that all *post*-removal filings by Lind–Waldock are unquestionably subject to Rule 11 (see, e.g., *Meadow Limited Partnership v. Meadow Farm Partnership*, 816 F.2d 970, 970–71 (4th Cir.1987)). That alone would not help Caans a great deal, though, for the bulk of their lawyers' summary judgment work came before (rather than after) the filing of the summary judgment response by Lind–Waldock, which was the first substantial Rule–11–violative filing in this District Court. But the procedural situation here is an intriguing one: Lind–Waldock's state court Complaint was itself filed *after* the Illinois General Assembly had amended Ill.Rev.Stat. ch. 110, ¶ 2–611 ("Section 2–611") to mirror Rule 11.[5] Yet as Lind–Waldock would have it, any removed lawsuit, no matter how frivolous in the legal sense, is insulated from sanctions:

---

**3.** It should be noted that letter was sent well within the 30–day timetable for Lind–Waldock's appeal from the judgment of dismissal.

**4.** That date was, of course, after the deadline for Lind–Waldock's appeal of the adverse judgment on the merits—if it wanted to file one.

**5.** Section 2–611 was amended effective November 25, 1986, and this Court has since then been

an invited panelist in an entire series of seminars sponsored by Illinois Institute for Continuing Legal Education to introduce the Illinois bar to Rule 11 jurisprudence. There is no question that Rule 11 served as the direct model for the amendment to Section 2–611, which is too recent a change to have generated any meaningful body of Illinois appellate case law.

1. No sanctions can be imposed in the state court because it has lost jurisdiction.

2. No sanctions can be imposed in this federal court because the Complaint was not filed here.

It would of course represent a neat question whether, post-removal, a federal court can properly apply the standard established by tne state statute (Section 2–611, part of the Illinois Code of Civil Procedure) to which the Complaint was specifically made subject when it was filed. But that question need not be dealt with in precisely that sense, because two separate answers appear to unlock the dilemma posed by Lind–Waldock.

First, by its own terms Rule 11 is not necessarily limited to the shifting of fees and expenses incurred in response to the offending pleading:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Before any "appropriate sanction" may be imposed, the Rule says *some* Rule–11–violative filing must be made in the federal court—but then the mandatory consequence that follows from such a filing is "an appropriate sanction." As a matter of ordinary meaning, the specification that such sanction "may *include*" the payment of "reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee" implies that the sanction is *not* necessarily limited to that amount.

■ To be sure, that potentially open-ended language should not be read in a way that does violence to the Rule's "legislative" history (principally the notes of the Advisory Committee on Rules to the 1983 amendment expanding Rule 11) or the Rule's underlying purpose. Thus this Court has held Rule 11 sanctions should not be extended to allow a defendant's recovery of consequential damages (*Diversified Technologies Corp. v. Jerome Technologies, Inc.*, 118 F.R.D. 445, 451–54 (N.D. Ill.1988), a case of first impression). But the Advisory Committee's notes, after stating the mandatory nature of the "shall impose" requirement, says:

> The court, however, retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted.

In the circumstances here, where federal jurisdiction attached after Lind–Waldock had filed a state court pleading (the Complaint) in violation of the direct state law counterpart of Rule 11, it would frustrate the purposes of Rule 11 for Lind–Waldock to escape sanctions on that ground alone for all Caans' work caused by that violation. See Parness, *More Stringent Sanctions under Federal Civil Rule 11: A Reply to Professor Nelken*, 75 Geo.L.J. 1937, 1938 & n. 9 (1987) and the unpublished opinion in *Kendrick v. Zanides*, No. 84–6295 (N.D.Cal. Aug. 28, 1985) referred to there; and see the earlier opinion in *Kendrick*, 609 F.Supp. 1162, 1170, 1173 (N.D.Cal.1985).

■ Second, the conduct of Lind–Waldock and its counsel in pursuing this litigation in the face of their immediate notification from Caans' counsel as to its untenability brought into play, even apart from Rule 11, Section 1927 and its statutory provision against counsel's "multipl[ying] the proceedings … unreasonably and vexatiously." Beginning with *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir.1985) our Court of Appeals has announced that statutory prohibition is to be construed under the same standards as Rule 11: requiring objective rather than subjective good faith on counsel's part in pursuing their clients' claims (see most recently *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752–53 (7th Cir.1988) and the earlier decision in *Ordower v. Feldman*, 826 F.2d 1569, 1573–74 (7th Cir.1987), both applying identical

standards under the two provisions). Thus Section 1927 affords an independent basis for granting Caans' claim as to all their lawyers' services.

In sum, Lind–Waldock's efforts to limit or eliminate entirely any potential for sanctions on procedural grounds fails. Although the discussion to this point has implied the existence of substantive violations of Rule 11 (or the equivalent standard under Section 1927), this opinion now turns to confirming that implicit premise.

### Merits of the Sanctions Motion

As for any substantive resistance to the ideas (1) that Lind–Waldock's Complaint violated the Rule–11–equivalent standard of Section 2–611, (2) that its counsel's conduct in pursuing the action in the face of the early challenges by Caans' lawyers violated Section 1927, and (3) that its filings in response to Caans' summary judgment motion violated Rule 11 itself, Lind–Waldock really provides nothing in response to Caans' thoughtful and persuasive submission on the current motion. As the Opinion reflects throughout, Lind–Waldock's asserted positions in support of its claim were not even colorable. Rather they failed to meet even a standard of nonfrivolousness. If Lind–Waldock's counsel did in fact investigate the earlier proceedings between the parties,[6] proceedings that proved to be the principal reason for the dismissal of the current case on summary judgment, counsel certainly did not face up to the square thrust and clear legal effect of those earlier foreclosure proceedings. As Caans' R.Mem. 10 summarizes matters:

> As a matter of record, [Lind–Waldock's] brief in opposition to the Caans' motion for summary judgment is almost devoid of such facts and law. (There, its argument with respect to the bankruptcy issue only referred to a case previously cited by the Caans, which it misconstrued. It cited *no* case law in its argument pertaining to the settlement and *res judicata* effect of the Wisconsin ac-

tion. Finally, it ignored established case law in its argument with respect to fraudulent concealment.)

■ Although this Court of course recognizes the need for a district judge's articulation of the reasons for granting or denying fee requests (a subject regularly revisited by our Court of Appeals), and this Court seeks to do so in every oral ruling or written opinion treating with that subject matter, that need should not call for the entry of findings of fact and conclusions of law comparable to those required under Rule 52(a) in a bench trial. Accordingly this opinion will state the reasons for granting Caans' motion in outline form, particularly because the Opinion itself has demonstrated the total lack of merit in Lind–Waldock's substantive arguments:

1. Lind–Waldock's counsel was confronted by Caans' lawyers at the very beginning with the preclusiveness of the Wisconsin foreclosure proceeding as a bar to this action (see Harbeck May 25 Aff. ¶ 4). In response Lind–Waldock's lawyer said simply "he did not see it that way." In view of the emptiness of Lind–Waldock's ultimate legal position as described in Opinion at 6–11, that response and the continued pursuit of Lind–Waldock's claim affirmatively show the lack of objective good faith that would be needed to avert Rule 11 and Section 1927 liability.

2. That same analysis applies to Lind–Waldock's persistence in its claim in the teeth of Caans' defense based on the bankruptcy proceeding (see Opinion at 11–13).

3. Lind–Waldock's counsel also ignored the clear Illinois authority that narrows the availability of fraud as a basis for tolling the clear bar of the statute of limitations (see Opinion at 13–15). And counsel has not sought to invoke the branch of Rule 11 that deals with "a good faith argument for the extension, modification, or reversal of exist-

---

**6.** Lind–Waldock's current memorandum and supporting affidavits say such an investigation took place.

ing law" (see, e.g., *In re Ronco, Inc.,* 838 F.2d 212, 218–19 (7th Cir.1988)).[7]

As n. 1 has reflected, this Court had initially opted for nonpublication of the Opinion. In substantial part that decision was based on a judgment that the questions dealt with on the merits were totally settled, so that the corpus juris would not be advanced in any meaningful sense by publication. That was another way of reflecting this Court's view, which should have been manifest from any reading of the Opinion, that Lind–Waldock was totally lacking in any basis for bringing suit here. That view has now been reconfirmed in the formal sense called for by Caans' motion for sanctions for Lind–Waldock's having instituted and then pursued this action, despite the poverty of its claims having been brought to its attention more than once.[8]

### Amount of Sanctions

In a half-page statement under the caption "Caans Fees Are Unreasonable" (Lind–Waldock Mem. 12), Lind–Waldock challenges the sufficiency of Caans' submission in support of the claim for fees and expenses. Once it is determined (as this Opinion has) that *all* services rendered on Caans' behalf (and not simply those following Lind–Waldock's first federal court filing) may be the subject of sanctions, that objection is a puzzling one. Harbeck's May 25 Affidavit is accompanied by extensive exhibits reflecting the fees and expenses incurred by Caans through May 1, 1988 (to which the fees on the current motion will have to be added). Absent any specifically identified deficiencies in that presentation, no reason for any disallowance is apparent here.

This Court is always mindful, as counsel should also be, of the problems occasioned by evidentiary hearings on fees—hearings that always give rise to the pyramiding of fees on fees. Accordingly, unless Lind–Waldock is prepared to provide a more particularized set of objections to the reasonableness of the requested fees (a request that includes a $500 adjustment downward by reason of the time charges incurred in connection with the substitution of local Illinois counsel for Caans), this Court is prepared to allow the request in the amount tendered. That should be done promptly, but a bit more time will be allowed to permit the parties to confer about the necessary supplementation of the request to cover fees-on-fees to date, in an effort to obviate any need for an evidentiary hearing on the entire subject (or at least minimize the scope of any necessary hearing).

### Conclusion

Caans' motion for reimbursement of all fees and expenses is granted under each of two independent alternatives: Rule 11 and Section 1927. Because this Court has no way of knowing the extent to which the decision to pursue this groundless action was insisted upon by Lind–Waldock (rather than its counsel being the moving force in that respect), the Rule 11 route will give rise to an order under which Lind–Waldock and its counsel are made jointly and severally liable, while Section 1927 by its terms applies only to an assessment against counsel. On or before August 2, 1988:

1. Lind–Waldock is ordered to file any particularized objections it wishes to assert to Caans' previously-filed petition.

---

7. If Lind–Waldock rather than Caans had brought this action to the federal court, Lind–Waldock would have had to confront the added problem that this alternative ground for avoiding Rule 11 has far less room for application—if indeed it has any at all—in a diversity case where state law provides the rule of decision. That is so because under *Erie* a federal district court cannot properly stretch the established frontiers of state law (see *Diversified Technologies,* 118 F.R.D. at 451 n. 7 and cases cited there).

8. In light of the analysis in this opinion, this Court need not make any finding (and it does not) as to the disputed alternative "improper purpose" branch that could trigger Rule 11 liability. This Court has also considered, but finds it unnecessary to deal with, the congeries of arguments Lind–Waldock Mem. 10–12 groups under the caption "Mitigating Factors and Conduct of Opposing Counsel," none of which contentions either singly or in the aggregate really merit discussion.

2. Caans are ordered to deliver to Lind–Waldock's counsel their supplemental request for fees and expenses incurred on the current motion (fees-on-fees).

This action is set for a status hearing at 9 a.m. August 9, 1988, at which time this Court should be in a position to determine the extent (if any) to which an evidentiary hearing is required or, alternatively, to issue its order quantifying the total amount of the award.